UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAMELA MURPHY,

       Plaintiff,                               Case No. 2:11-cv-238
                                                 JUDGE GREGORY L. FROST
    v.                                           Magistrate Judge Elizabeth P. Deavers

THE OHIO STATE UNIVERSITY,

       Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (ECF No. 30), Plaintiff's memorandum in opposition (ECF No. 37), and Defendant's reply memorandum (ECF No. 40).  For the reasons that follow, this Court finds the motion well taken.[1]

### I.  Background

Since 2009, Plaintiff, Pamela Murphy, has worked as a dispatcher for Defendant, The Ohio State University.  After a period of working on a part-time basis, Plaintiff began working as a dispatcher full time in November 2009.  The employment relationship has since soured, however, and the result is this lawsuit.  Two sets of factual events present the issues Plaintiff raises in this action.

The first issue involves Plaintiff's dispatcher pay.  Plaintiff's starting rate of pay for her full-time position was $17.50 per hour, with an additional shift differential that brought her

---

[1] Throughout this Opinion and Order, all pinpoint references to documents filed on the electronic docket shall be to the page numbers assigned by the electronic filing system for each document, not to the original page numbers of the documents involved.

hourly pay up to $18.00.  Six months after Plaintiff began full-time employment, Defendant hired Matthew Robbins as a full-time dispatcher.  Robbins, a younger male who had previously worked as a dispatcher for nine years, started at a greater base hourly rate than Plaintiff and also received an additional shift differential equal to Plaintiff.  Plaintiff sought a pay increase, but that request proved unsuccessful.

Also relevant to this litigation is that, on September 24, 2011, Plaintiff received a citation from the Columbus Police Department for disobeying the commands of a public safety officer.  This incident involved Plaintiff's driving over a curb, over grass, and around barricades while on her way to work.  The OSU Department of Public Safety received a copy of a report detailing the citation on September 27, 2011.  Plaintiff then requested and obtained leave under the Family Medical Leave Act, which ran from September 30, 2011, through December 21, 2011. During this period of leave, Defendant was contacted by the City of Grandview Heights.  The city indicated that Plaintiff had applied for a full-time dispatching position, and Defendant learned that Plaintiff had been working as a part-time city dispatcher while on leave.  After returning to work, Plaintiff was advised that she was under investigation for having received the failure to obey citation and for working while on medical leave.  A hearing was held as a result of these investigations, and Plaintiff was ultimately suspended for three days.

Plaintiff subsequently filed the instant action in March 2011.  (ECF No. 1.)  In a Second Amended Complaint, she asserts claims for violation of the federal Equal Pay Act ("EPA") under 29 U.S.C. § 206 (Count I), violation of Title VII (Count II), violation of the Age Discrimination in Employment Act ("ADEA") under 29 U.S.C. § 621 (Count III), EEOC retaliation under 42 U.S.C. 2000e-3(a) (Count IV), and violation of the Family Medical Leave

Act ("FMLA") under 29 U.S.C. §§ 2615(a)(1) and (a)(2) (Count V).[2] (ECF No. 24 ¶¶ 19-49.) The crux of Plaintiff's claims is that Defendant has paid Plaintiff lower wages than similarly situated male dispatchers and that Defendant suspended her for the three days in retaliation for filing with the Equal Employment Opportunity Commission ("EEOC") and for her having taken the FMLA leave in 2011. Defendant has filed a motion for summary judgment on all of Plaintiff's claims. (ECF No. 30.) The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

### A. Standard involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A

---

[2] An apparent scrivener's error in the Second Amended Complaint labels the FMLA claim as Count VI. (ECF No. 24, at 7.)

genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

Count I of the Second Amended Complaint is Plaintiff's EPA claim. The Sixth Circuit has explained such a claim as follows:

> "The EPA prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work." *Beck–Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)). Thus, to establish a *prima facie* case under the EPA, a plaintiff must demonstrate "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions' . . . ." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).

*Mallison v. Haworth, Inc.*, No. 11-1218, 2012 WL 2580609, at *3 (6th Cir. July 3, 2012). The court of appeals has also explained the inquiry that often follows the establishment of a *prima facie* case:

> If a plaintiff establishes a *prima facie* case of wage discrimination under the EPA, an employer can establish an affirmative defense by showing that its compensation decision was based on (1) seniority; (2) merit; (3) "a system which measures earnings by quantity or quality of production"; or (4) any "factor other than sex." 29 U.S.C. § 206(d)(1); *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (citing *Corning Glass Works,* 417 U.S. at 196). The employer bears the burden of establishing that its proffered explanation for the wage differential is true. *Balmer v. HCA, Inc.*, 423 F.3d 606, 613 (6th Cir. 2005) *abrogated on other grounds by Fox v. Vice*, 131 S .Ct. 2205 (2011). If it does, the

>   burden returns to the plaintiff to show that the employer's explanation is pretextual. *Id.* (citing *Buntin*, 134 F.3d at 800 n.7).

*Id.*

Here, there is no dispute that Defendant pays Plaintiff and Matthew Robbins differently. What is in dispute is why. Plaintiff argues that gender underlies the difference, while Defendant asserts Robbins makes more simply because he has more experience. Assuming *arguendo* that Plaintiff has established a *prima facie* case, her claim nonetheless fails because Defendant has established an affirmative defense.

A dispatcher's employment is subject to a collective bargaining agreement ("CBA") between the Fraternal Order of Police Union and Defendant. That agreement provides "a new Employee may be offered a wage rate commensurate with their experience compared to that of an existing Bargaining Unit member." (ECF No. 30-4, at 27.) The deposition testimony of Todd Hunter, Defendant's Director of Human Resources for Administration and Planning, indicates that Defendant implements the CBA so that years of experience determine the starting wage, with those with more years of full time experience receiving a greater initial hourly wage than those with part-time or no experience.

Plaintiff disputes the legitimacy of this rationale. She argues that "[t]his reading of the CBA perpetuates the differences in wages for as long as the employee remains a dispatcher" and that "[t]his is exactly what the [EPA] was designed to remedy." (ECF No. 37, at 7.) Therefore, Plaintiff rejects the CBA experience provision as providing an affirmative defense and asserts that she should make more than Matthew Robbins because she has been around the university since she was ten years old and has more experience there.

5

This reasoning is flawed. It is well settled that industry-related experience is a "factor other than sex" and may legitimately explain wage differentials for otherwise equal work. *Mallison*, 2012 WL 2580609, at *3 (citing *Balmer*, 423 F.3d at 612-13).

The effect of Defendant's "factor other than sex" sometimes works in favor of a female (Plaintiff was hired in at a higher wage than Garrett Pugh, a subsequently hired male employee with less experience) and sometimes against a female (Plaintiff was hired in at a lower wage than Matthew Robbins, who had more experience than Plaintiff). Other female dispatchers make more than Plaintiff and some male dispatchers while some make less than Plaintiff and male dispatchers. There is no inference that sex was a factor in setting starting salaries. *See Ambrose v. Summit Polymers, Inc.*, 172 F. App'x 103, 108 (6th Cir. 2006). There is no disparate impact here. There is no evading summary judgment.

Defendant is therefore entitled to prevail on Plaintiff's Count I EPA claim. Plaintiff then again targets pay in the Title VII discrimination claim constituting Count II of her Second Amended Complaint. Summary judgment for Defendant is also warranted on this claim for two reasons.

First, the same analysis that results in the failure of her EPA claim also serves to dispose of her related Title VII claim. Another judicial officer in this District has explained the effect of the failure of a similar EPA claim on a related Title VII claim as follows:

> A plaintiff claiming wage discrimination under Title VII, as opposed to the EPA, must demonstrate proof of discriminatory intent. *Beck–Wilson v. Principi*, 441 F.3d 353, 360 (6th Cir. 2006). But "A Title VII claim of wage discrimination parallels that of an EPA violation insofar as it incorporates the EPA's affirmative defenses." *Beck–Wilson*, 441 F.3d at 369 (citing *Washington County v. Gunther*, 452 U.S. 161, 167–71, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)). Thus, even if [the plaintiff] could establish a prima facie case of wage discrimination under Title VII,

> [the defendant] is entitled to summary judgment because it has established an affirmative defense—that the wage differential is due to a factor other than sex.

*EEOC v. Home Depot USA*, No. 4:07-cv-143, 2009 WL 395835, at *17 (N.D. Ohio Feb. 17, 2009).  The same rationale applies here.

Second, this Court agrees with Defendant's reply memorandum argument that although Plaintiff sets forth the standard for a Title VII claim in her memorandum in opposition, she does not present actual argument specifically related to that particular standard as it relates to the facts of this case.  Consequently, Plaintiff is deemed to have abandoned her Title VII claim.  *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24-25 (6th Cir. 2003) (stating that a plaintiff's failure to brief a claim in the district court is an abandonment of the claim); *Colston v. Cleveland Pub. Library*, No. 1:12-CV-204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her oppositions to Defendants' motions for summary judgment"); *Thomas v. Starbucks Corp.*, No. 3:10-1158, 2012 WL 1900919, at *4 (M.D. Tenn. May 24, 2012) (holding that a district court can decline to consider a claim's merits when a plaintiff fails to address the claim in a summary judgment response); *EEOC v. Home Depot USA*, 2009 WL 395835, at *17 ("When a plaintiff asserts a claim in a complaint but then fails to delineate that claim in her brief in opposition to

summary judgment, that claim is deemed abandoned."); *Anglers of the Au Sable v. United States Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

      This abandonment rationale also disposes of Plaintiff's Count III ADEA claim. Defendant correctly notes in its reply memorandum that "Plaintiff does not even refer to her age discrimination (ADEA) claims at any time in her Memorandum Contra Summary Judgment" and "Plaintiff does not mention her age discrimination claim at all." (ECF No. 40, at 2.) Accordingly, summary judgment in favor of Defendant is warranted on Plaintiff's abandoned Count III claim. *See Hicks*, 449 F. App'x at 487; *Clark*, 178 F. App'x at 524-25; *Conner*, 65 F. App'x at 24-25; *Colston*, 2012 WL 3309663, at *2 n.2; *Thomas*, 2012 WL 1900919, at *4; *EEOC v. Home Depot USA*, 2009 WL 395835, at *17; *Anglers of the Au Sable*, 565 F. Supp. 2d at 839. Moreover, the Court would reach the same result in favor of Defendant if it were to consider the merits of Count III, given that Defendant has offered the non-discriminatory reason of the CBA's experience provision for the wage differences of which Plaintiff complains, while Plaintiff has failed even to assert pretext, much less demonstrate that a factual dispute exists. *Gulley v. Cnty. of Oakland*, No. 11-1611, 2012 WL 3668001, at *6 (6th Cir. Aug. 27, 2012) (holding that summary judgment for a defendant is appropriate in an ADEA case where a plaintiff fails to create a genuine issue of material fact regarding pretext).

      In Count IV, Plaintiff asserts a claim for retaliation related to the filing of a 2009 EEOC charge (and perhaps an additional charge, although unlikely, given that the record is less than consistent on this point). The Sixth Circuit has explained the analytic process involved in such a

8

retaliation claim:

> To make a prima facie showing of retaliation, a plaintiff must demonstrate that he engaged in a protected activity and that the defendant took an adverse employment action against him that was causally related to the protected activity. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). If the plaintiff establishes a prima facie case, the defendant must offer a non-discriminatory reason for the adverse employment action. *Id.* If the defendant does so, the plaintiff must demonstrate that the proffered reason was mere pretext. *Id.*

*Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011). Defendant seeks summary judgment on the grounds that Plaintiff has no evidence whatsoever that the investigations she underwent and the resulting suspension were related to her EEOC filing.

This Court agrees with Defendant. The following exchange took place at Plaintiff's deposition:

> Q. Okay. Now, what evidence do you have or what leads you to believe that the investigation was instituted as a result of you filing an EEOC charge two years earlier?
>
> . . .
>
> THE WITNESS: The investigation did not start until after I returned several months after the September 24, 2011 incident.
>
> . . .
>
> Q. Anything else?
> A. In that respect it started even months after I returned from my medical leave.
> Q. Anything else?
> A. The university had not ever had a problem with where else I was working.
> Q. Anything else?
> A. Not at this time.
> Q. No?
> A. Not at this time, no.

(ECF No. 29-1, at 9-10.) No reasonable jury could find that the adverse employment actions that

9

Plaintiff targets were causally related to protected EEOC filing based on this testimony, either alone or combined with additional testimony discussed below.

The Sixth Circuit has explained that its "precedent is clear that mere temporal proximity between an assertion of Title VII rights and a materially adverse action, without other indicia of retaliatory conduct, is not sufficient to establish the causal connection element of a retaliation claim." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 770 (6th Cir. 2008). Here, there is not even temporal proximity, but the opposite; the alleged retaliation took place literally *years* after Plaintiff's EEOC filing. It defies logic to infer that any adverse action that took place years after the EEOC filing can present a time-derived inference of a causal connection when it would not have been enough if there have been actual temporal proximity. The Sixth Circuit in fact has recognized that "[s]everal courts have held that a significant gap in time between the protected activity and the adverse action cannot give rise to an inference of a retaliatory motive." *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 344 (6th Cir. 2001) (rejecting three-year gap between protected activity and alleged retaliation as creating inference of retaliatory motive). Summary judgment for Defendant is appropriate on Plaintiff's Count IV retaliation claim.

Finally, Plaintiff asserts FMLA claims in the last count of her Second Amended Complaint: one for interference and one for retaliation. Defendant is entitled to summary judgment on both components of this count.

In regard to the interference component, the Court agrees with Defendant's reply memorandum contention that because "Plaintiff does not mention her claim for 'FMLA interference' in any fashion in her Memorandum Contra" (ECF No. 40, at 6), the dismissal of this abandoned claim is proper. *See Hicks*, 449 F. App'x at 487; *Clark*, 178 F. App'x at 524-25;

*Conner*, 65 F. App'x at 24-25; *Colston*, 2012 WL 3309663, at *2 n.2; *Thomas*, 2012 WL 1900919, at *4; *EEOC v. Home Depot USA*, 2009 WL 395835, at *17; *Anglers of the Au Sable*, 565 F. Supp. 2d at 839.

In regard to the retaliation component, Plaintiff has again failed to present a *prima facie* case. To establish a *prima facie* case of FMLA retaliation, Plaintiff must prove that (1) she availed herself of a protected right under the FMLA, (2) Defendant knew of her exercise of a protected right, (3) she was adversely affected by an employment decision made by Defendant, and (4) there was a casual connection between the exercise of the protected right and the adverse employment action. *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *cf. Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Similar to her testimony in regard to the her EEOC retaliation claim, Plaintiff's testimony in regard to her FMLA retaliation claim fails to present a causal connection.

> The following exchange took place at Plaintiff's deposition:
>
> Q. In regard to your allegation that the defendants retaliated against you for using family and medical leave time, what leads you to believe that?
>
> A. Well, the retaliation stems from the whole process of not accepting this as what it is, accepting the Medical Certification of Health Care Provider for Employee's Serious Health Condition as for what it is, being questioned about it, and then not being believed, and then being brought upon punishment for it.
>
> Q. So you're telling me that the retaliation – well, the retaliation you're alleging is the same as the retaliation for the EEOC filing; is that correct?
>
> A. Yes.
>
> Q. So you're alleging that the investigation that we talked about earlier today, the investigation into your use of family and medical leave time and the investigation into the traffic citation and the disobeying of public safety officer --
>
> . . .

> A. Yes.
>
> Q. – that's the same investigation you are referring to in regard to family and medical leave retaliation; is that correct?
>
> A. Yes.
>
> Q. Okay. So it's your testimony that you were retaliated against both for filing an EEOC charge and for filing a Family and Medical Leave Act claim in the form of this investigation; is that correct?
>
> A. I believe the retaliation all stems from me filing the EEOC charge. I believe that the university is trying to tarnish my reputation or discredit me for filing the EEOC complaint.
>
> Q. So do you believe the university has retaliated against you for filing a Family and Medical Leave Act claim?
>
> . . .
>
> A. Yes.
>
> Q. What leads you to believe that?
>
> A. Because of the fact they are questioning me about this months after I had returned to work.
>
> Q. I just want to make sure we're talking about the same thing. When you say the fact that they questioned you about this, and you are pointing to your Family Medical Leave Form – let me finish – you're referring to the investigation about you working at another employer while you were off on FMLA leave; is that correct?
>
> A. Correct.
>
> Q. Anything else that leads you to believe or any other evidence you have that the investigation was a result of you filing a Family and Medical Leave Act claim?
>
> . . .
>
> A. I'm not sure I understand that question.
>
> Q. Well, you've told me that you believe you were retaliated against because there was an investigation into your use of family medical leave time, correct?
>
> A. Correct.
>
> Q. Any other evidence or reason to believe that the investigation was instituted as a result of you filing a Family and Medical Leave Act claim, other than what you have already told me?
>
> A. None that I am aware of at this time.

(ECF No. 29-1, at 15-18.) This testimony points to Plaintiff's theory of her claim: she speculates that Defendant retaliated against her for taking FMLA leave solely because Defendant conducted

its investigation after she returned from that leave.

Defendant has pointed this Court to testimony that it conducted its investigation when it did based on a legitimate, non-discriminatory and non-retaliatory reason. When asked if he knew why the investigation was held when it was, Todd Hunter testified at his deposition as follows:

> A. I do. Ms. Murphy went out on an extended medical leave shortly after [the citation incident], so we could not launch an internal affairs investigation until – well, I don't know if we could or couldn't, but it didn't seem appropriate to launch an internal affairs investigation until she was back and could be made aware of the situation.

(ECF No. 27-2, at 25-26.) Plaintiff has offered no contrary evidence that presents a genuine issue of material fact. The uncontested evidence fails to present an inference arising from when the investigation and resulting discipline took place to present a fact question. Absent such an inference or any evidence suggesting a causal connection, Plaintiff's claim necessarily fails.

Nor does Plaintiff's "not at this time" responses salvage her claim. As this Court previously noted in another case:

> Plaintiff thus seeks to evade judgment by hypothesizing that there *might possibly* be a connection that she can later prove, but the time to present her evidence is now, and she has failed to do so. Such blatant, conclusory speculation hardly rises to the level of presenting evidence creating even a factual dispute as to whether there is a casual connection between the exercise of Plaintiff's protected right to FMLA leave and any adverse employment actions.

*Blackshear v. Interstate Brands Corp.*, No. 2:09-cv-06, 2010 WL 2045195, at *8 (S.D. Ohio May 21, 2010). This statement is equally relevant here.

Via Todd Hunter's deposition, Defendant has offered evidence that it investigated

13

Plaintiff in connection with her FMLA leave because she was working for another employer while on that leave.  This is a legitimate and permissible reason for the investigation, and the fact that Plaintiff was indeed working for another employer while on leave–leave that did not permit her to work *at all*–is a legitimate and proper reason for the suspension (both alone and coupled with Plaintiff's citation).  Plaintiff has failed to point to factual issues and seeks to evade summary judgment based on an inference that cannot logically exist in light of the evidence.  Defendant is therefore entitled to summary judgment on Plaintiff's FMLA count.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment.  (ECF No. 30.)  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

      /s/ Gregory L. Frost  
GREGORY L. FROST  
UNITED STATES DISTRICT JUDGE